UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

L.A. INSURANCE AGENCY
FRANCHISING, LLC,

        Case No. 2:18-cv-12310

    Plaintiff,

        HONORABLE STEPHEN J. MURPHY, III

v.

SULEIMAN KUTOB, et al.,

    Defendants.
                            /

**OPINION AND ORDER GRANTING DEFENDANTS'
MOTION TO ENFORCE SETTLEMENT AGREEMENT [43]**

On March 31, 2019, the Court dismissed the case without prejudice because the Court-appointed mediator advised that the parties had settled, but then they failed to timely submit documentation. ECF 41. The Court required the parties to submit a proposed, stipulated order of dismissal with prejudice by April 10, 2019. *Id.* at 1149. The parties failed to comply with the court-imposed deadline and did not submit the required documentation.[1]

Then, on May 24, 2019, Defendants filed a motion to enforce the settlement agreement. ECF 43. Plaintiff's response was due on Friday, June 7, 2019. *See* E.D. Mich. LR 7.1(e)(2) (defining nondispositive motions and providing 14 days for a response). Plaintiff did not file a response. Instead, at 4 p.m. on Friday, June 7, the

---

[1] This is not the first time the parties failed to comply with a court-imposed deadline. *See, e.g.*, ECF 37, PgID 1140; ECF 39, PgID 1144 (describing the extensions provided); ECF 41, PgID 1149 (detailing the parties' failure to timely submit appropriate documents).

1

parties submitted a proposed, stipulated order to extend the time for Plaintiff to respond. By filing a late request, the parties ignored the Court's Practice Guidelines. *See Practice Guidelines for Judge Stephen J. Murphy, III*, (notifying parties that it takes one to two days to review and approve proposed, stipulated orders), https://www.mied.uscourts.gov/index.cfm?pageFunction=chambers&judgeid=31. The Court did not enter the proposed, stipulated order, but Plaintiff nevertheless filed its tardy response. *See* ECF 44 (Plaintiff's response filed June 10, 2019). The parties continue to disregard Court-ordered deadlines and deadlines mandated by the Local Rules. Any future noncompliance with Court orders, Local Rules, or other deadlines will result in the Court sanctioning the noncompliant party.

The Court has reviewed the briefs and finds that a hearing is unnecessary. E.D. Mich. LR 7.1(f). For the reasons below, the Court will grant Defendants' motion.

## BACKGROUND

The Court previously detailed the nature of the parties' underlying legal dispute. *See* ECF 33, PgID 1119–21. The Court adopts the description here. Defendants—individuals and the insurance agencies they operate—are franchisees of Plaintiff, L.A. Insurance Franchising Agency.

The current dispute involves execution of the parties' Settlement Agreement. Defendants allege that Plaintiff failed to uphold the Settlement Agreement. The Settlement Agreement included terms governing Plaintiff's release of certain commissions earned by Defendants but withheld by Plaintiff during the legal dispute ("Held Commissions"). Plaintiff distributed 40% of the Held Commissions. Defendants maintain that Plaintiff did not release the remaining 60% of Held

Commissions owed to them. ECF 43, PgID 1161. Defendants also allege that Plaintiff did not send letters to Defendant Suleiman Kutob's insurance carrier clients as required. *Id.*

Plaintiff responds that Defendants failed to submit fully executed franchise agreements because the lease addendums lacked the agencies' landlords' signatures. ECF 44, PgID 1282. Plaintiff also avers that Defendants did not install appropriate signage. *Id.* at 1283. Plaintiff argues that Defendants' "failure to provide Plaintiff with those addendums" and "failure to install approved signage" are "material breach[es] of the settlement agreement." *Id.* at 1279.

**LEGAL STANDARD**

Courts possess "inherent authority to enforce settlement agreements between parties before it." *U.S. Olympic Comm. v. David Shoe Co.*, 835 F.2d 880, at *2 (6th Cir. 1987) (Table); *see also Bamerilease Capital Corp. v. Nearburg*, 958 F.2d 150, 152 (6th Cir. 1992) (citation omitted).[2] If the parties dispute the settlement agreement's terms or validity, the Court ordinarily must conduct an evidentiary hearing. *Kukla*

---

[2] To ensure the Court possesses subject-matter jurisdiction over Defendants' attempt to enforce the settlement agreement, the Court ordered supplemental briefing. ECF 46. Plaintiff failed to comply with the Court order and did not file a brief. Defendants responded. ECF 47. The Court is satisfied that it possesses subject-matter jurisdiction. After a dismissal with prejudice, a district court can exercise jurisdiction if (1) there is "an independent basis for federal jurisdiction" or (2) grounds exist for ancillary jurisdiction either because (a) "the dismissed claims are factually interdependent with the disputed terms of settlement" or (2) jurisdiction is necessary to vindicate the Court's authority or for it to function properly. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 379–80, 382 (1994). The Court agrees with Defendants' analysis that the present dispute has an independent basis for federal jurisdiction, is factually interdependent with the dismissed claims, and must be addressed to vindicate the Court's authority. *See* ECF 47, PgID 1308–10.

3

*v. Nat'l Distillers Prods. Co.*, 483 F.2d 619, 621–22 (6th Cir. 1973) (citation omitted). If, however, an agreement is clear and unambiguous, or no issues of fact are present, no evidentiary hearing is required. *Aro Corp. v. Allied Witan Co.*, 531 F.2d 1368, 1372 (6th Cir. 1976). Thus, "summary enforcement of a settlement agreement has been deemed appropriate [when] no substantial dispute exists regarding the entry into and terms of an agreement." *RE/MAX Int'l, Inc. v. Realty One, Inc.*, 271 F.3d 633, 646 (6th Cir. 2001) (citing *Kukla*, 483 F.2d at 621). The Court "enforce[s] the settlement as agreed to by the parties and is not permitted to alter the terms of the agreement." *Brock v. Scheuner Corp.*, 841 F.2d 151, 154 (6th Cir. 1988) (citation omitted).

## DISCUSSION

I. <u>The Settlement Agreement's Terms</u>

The Settlement Agreement required Plaintiff to release 40% of Defendants' Held Commissions within seven days of receipt of the Settlement Agreement and the new franchise agreements, or "receipt of the Carrier Verifications," whichever occurred later. ECF 43-2, PgID 1227. Plaintiff released the funds.

The release of the remaining 60% of Defendants' Held Commissions was conditioned on: (1) the receipt of the Settlement Agreement and the new franchise agreements; (2) the "receipt of the Carrier Verifications"; and (3) Plaintiff's "written approval of all L.A. Insurance signage to be installed at the applicable [Defendant] Agencies in accordance with the specifications provided" on February 4, 2019. ECF 43-2, PgID 1227. Plaintiff "agree[d] to provide written notice to the applicable [Defendant] Agency whether it approves of the signage within seven (7) days of the agency providing written notice to [Plaintiff] that it believes the signage has been

4

installed" as required. *Id.* n.2. The funds needed to be released "within seven (7) days" of the completion of the three conditions. *Id.*

Plaintiff also agreed "to provide written notice to the carriers with whom the [Defendant] Agencies have done or do business" in the format agreed on by the parties. ECF 43-2, PgID 1227.

Finally, the Settlement Agreement stated that, "[i]n the event of a breach or default, threatened breach or default, or claimed breach or default of this Agreement by any of the [P]arties," and a subsequent court proceeding to enforce the Settlement Agreement, "the prevailing Party shall recover against the opposing Party all of its reasonable attorneys' fees and costs incurred in connection" with the legal proceeding. *Id.* at 1232.

II. <u>Lease Addendums</u>

Plaintiff first excuses its nonperformance by claiming that Defendants failed to fully execute the franchise agreements because Defendants' landlords did not sign an addendum to their lease agreements. ECF 44, PgID 1279. Plaintiff claims that the new franchise agreements required the lease addendums. *Id.* Defendants reply that Plaintiff repeatedly acknowledged the completion of the franchise agreements. ECF 45, PgID 1291–93.

Neither party provided a copy of the franchise agreements. Regardless, Plaintiff acknowledged receipt of the fully executed franchise agreements. In emails dated April 4 and 29, 2019, Plaintiff's counsel advised that "[a]ll parties have completed Franchise Agreement[s]" for the relevant Defendant agencies. *See* ECF 43-

5

1, PgID 1187; ECF 45, PgID 1300–01. Plaintiff cannot now assert that Defendants failed to exchange the franchise agreements "in fully executed form, signed by all parties." *See* ECF 44, PgID 1282. The landlord lease addendums may be important to Plaintiff's interests, *see id.* at 1280, but that importance does not overcome Plaintiff's own representations that the franchise agreements were completed by all parties. The lease addendums therefore do not provide a basis for Plaintiff's failure to perform.

III. Signs at Franchise Locations

Second, Plaintiff maintains that it need not release the remaining 60% of Held Commissions because "it never approved the new signage installed by Defendants, in writing or otherwise." ECF 44, PgID 1283. Defendant rejoins that Plaintiff did approve the signage and that, even if it did not approve the signage, Plaintiff failed to timely respond. ECF 45, PgID 1294.

The disagreement centers around whether the Defendant agencies' new signage complies with Plaintiff's specifications. The Settlement Agreement required Defendants to install signage "in accordance with the specifications provided to [them] on February 4, 2019." ECF 43-2, PgID 1227. Again, neither party provided a copy of the February 4, 2019 specifications.

On March 15, 2019, Kutob texted Plaintiff VP Fateh Fetouhi and requested the contact information for Fetouhi's "sign guy." ECF 43-2, PgID 1256. When Kutob advised that he got a quote for $8,500 for the sign installation, Fetouhi commented that he thought that was cheap. *Id.* Kutob explained that the agency already had the

"insurance sign;" to which Fetouhi responded: "That makes more sense now." *Id.* at 1257.

To comply with the sign requirements, Defendants removed existing "E.Z." lettering and replaced it with "L.A.," but left the preexisting "Insurance" sign in place. ECF 44, PgID 1281; ECF 45, PgID 1293.

On April 3, 2019, Defendants' counsel emailed Plaintiff's counsel and notified him that "[a]ll of the signs are up" and asked when Plaintiff would release the remainder of the Held Commissions because Defendants had "complied with everything under the settlement agreement." ECF 43-2, PgID 1250.

On April 9, 2019, Kutob texted Fetouhi pictures of the new signs. *See* ECF 43-1, PgID 1182–84.

On April 12, 2019, Plaintiff's counsel stated that "[r]elease of the first 40 percent of the commissions is contingent on [Plaintiff's] written approval of [Defendants'] new signage. That signage, depicted in the attachments, is not in accordance with the specifications provided to your client on February 4." ECF 43-2, PgID 1255.[3]

Plaintiff failed to timely respond to Defendants' notification that the new signage was installed. The settlement agreement required Plaintiff "to provide written notice to the applicable [Defendant] Agency whether it approves of the

---

[3] Plaintiff's counsel's email misrepresents the actual language of the Settlement Agreement. The signage requirement applies *only* to the second 60% of Defendants' withheld commissions. *See* ECF 43-2, PgID 1240.

7

signage within seven (7) days" of receiving notice of the new signage. *Id.* at 1227 n.2. Plaintiff did not provide approval within seven days, as required.

Plaintiff contends that it responded within three days of receiving the text messages of the signage on April 9, 2019. ECF 44, PgID 1281. But the Settlement Agreement's terms simply required Defendants "to provide written notice . . . that it believes the signage had been installed" as required; the Settlement Agreement did not require anything more. *See* ECF 43-2, PgID 1227 n.2. And the Court will not modify the Settlement Agreement to include a term that Defendants provide written notice *and photographic proof* of compliance with the sign requirements. Defendants' counsel provided written notice on April 3, and Plaintiff did not respond until nine days later. Plaintiff failed to approve the signs within the seven days provided by the Settlement Agreement and thus missed its opportunity to timely object to or approve of Defendants' new signs. The signage therefore does not excuse Plaintiff's failure to perform.

As such, Plaintiff was obligated to release the remaining 60% of the Held Commissions within 7 days of the period to approve the signage, or April 17, 2019.

IV. Form Letter to Carriers

Third, Plaintiff argues that "[t]here is no timeline for [it] to send written notice of the settlement to the insurance carriers." ECF 44, PgID 1283. Plaintiff provides no other reason for its failure to send the agreed-upon letters. Given that Plaintiff acknowledged Defendants' completion of the franchise agreements and failed to timely respond to its signage, Plaintiff has no good-faith basis to refuse to perform

8

the letter delivery, as required by its settlement agreement with Defendants. The Court will order Plaintiff to mail the letters.

V. <u>Attorney's Fees</u>

Finally, Defendants seek attorney's fees pursuant to the Settlement Agreement. *See* ECF 43, PgID 1168–69. Plaintiff's failure to perform its contractual obligations, and Defendants' need to file a motion to enforce the settlement trigger the Settlement Agreement's enforcement provision. *See* ECF 43-2, PgID 1232. The enforcement provision allows a prevailing party to recover "all of its reasonable attorneys' fees and costs." *Id.* Defendants seek a total of $8,441.75—$6,912.50 in attorney's fees for the motion to enforce the settlement agreement, and half the cost of the mediation fees, $1,529.25. ECF 43, PgID 1169.

The Court will award the attorney's fees amount, but not the cost of mediation. First the mediation fees are not covered by the Settlement Agreement's enforcement provision because the mediation did not involve enforcement of the Settlement Agreement. *See* ECF 43-2, PgID 1232. Second, the attorney's fees sought are reasonable. And Plaintiff does not make an argument otherwise. *See generally* ECF 44. The Court will therefore award Defendants $6,912.50 in attorney's fees.

**ORDER**

**WHEREFORE**, it is hereby **ORDERED** that Defendants' motion to enforce the settlement [43] is **GRANTED**.

**IT IS FURTHER ORDERED** that, within seven days of this Order, Plaintiff shall **DISBURSE** to Defendants the remaining 60% of the Held Commissions and all relevant interest.

9

**IT IS FURTHER ORDERED** that, within seven days of this Order, Plaintiff shall **DELIVER** the form letters to participating insurance carriers as agreed to in the Settlement Agreement.

**IT IS FURTHER ORDERED** that Plaintiff shall **PAY** Defendants' reasonable attorney's fees, a total amount of **$6,912.50**, incurred by filing the motion to enforce the settlement agreement.

Any failure to comply with this Order in a timely fashion may result in sanctions.

**SO ORDERED**.

s/ Stephen J. Murphy, III  
STEPHEN J. MURPHY, III  
United States District Judge

Dated: July 18, 2019

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on July 18, 2019, by electronic and/or ordinary mail.

s/ David P. Parker  
Case Manager